UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x        16 Civ. _____

MARINA STAJIC,
                                                                     COMPLAINT
                        Plaintiff,

            -against-                                                 PLAINTIFF DEMANDS
                                                                     A TRIAL BY JURY
THE CITY OF NEW YORK, BARBARA
SAMPSON, in her individual capacity, and
TIMOTHY KUPFERSCHMID, in his individual
capacity,

                        Defendants.
------------------------------------------------------------x

       Plaintiff Marina Stajic ("Stajic" or "plaintiff"), by her counsel, Law Office of Kevin

Mintzer, P.C. and Alterman & Boop LLP, complaining of defendants The City of New York (the

"City"), Barbara Sampson ("Sampson"), in her individual capacity, and Timothy Kupferschmid

("Kupferschmid"), in his individual capacity (collectively, "defendants"), alleges as follows:

## NATURE OF CLAIMS

       1.     Marina Stajic had been the Director of the Forensic Toxicology Laboratory for the

New York City Office of Chief Medical Examiner ("OCME") for over 29 years when, in April

2015, she was informed by Barbara Sampson, the Chief Medical Examiner, that she could either

resign immediately or be terminated.  The decision to fire Stajic was not related to Stajic's job

performance, which had consistently been strong.  Rather, Stajic was forced out of her job

because of her work as an appointee of the Governor on the New York State Commission on

Forensic Science ("CFS" or "Commission"). Sampson and one of her top deputies,

Kupferschmid, retaliated against Stajic because they were displeased that Stajic, as a member of

the Commission, had expressed views related to OCME's work that differed from their own. Moreover, defendants could not accept that Stajic, while working for OCME, had a separate public position in which she oversaw and opined on OCME's operations.  In retaliating against Stajic for her speech as a citizen and a member of the Commission, defendants violated Stajic's rights under the First Amendment, as enforced through 42 U.S.C. § 1983 ("Section 1983"), as well as the New York State Constitution and New York's Executive Law ("Executive Law").

2.     Defendants also discriminated against Stajic because of her age.  In January 2015, Kupferschmid asked Stajic and two of her direct reports, all in their mid-sixties, when they planned to retire.  Stajic was surprised by the question and told Kupferschmid that she had no plans to stop working.  Several months later, defendants forced Stajic out of her job.  Stajic was one of several older senior managers within OCME who defendants have recently fired or demoted.  Defendants have announced that they are replacing Stajic with a woman who is approximately 41 years old and who has less than half of Stajic's experience as a toxicologist. Defendants' discriminatory actions against Stajic violated the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 *et seq.* (the "NYCHRL").

3.     Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief.

<u>PARTIES, JURISDICTION AND VENUE</u>

4.      Plaintiff Marina Stajic is a 66 year-old woman.  She is a resident of the State of New York.

5.     Defendant City of New York is a municipality.  The Office of Chief Medical Examiner is a division of the City's Department of Health and Mental Hygiene.

6.      Defendant Barbara Sampson is the Chief Medical Examiner of the City of New York.  Sampson is an appointee of the Mayor and is approximately 49 years old. At all relevant times, Sampson's actions described within were undertaken under color of state law.  Moreover, Sampson is an "employer" within the meaning of the Executive Law and the NYCHRL because she had the power to hire and fire OCME employees, including Stajic.

7.      Defendant Timothy Kupferschmid is the Chief of Laboratories within the Office of Chief Medical Examiner.  On information and belief, he is in his forties.  At all relevant times, Kupferschmid reported to Sampson and his actions as described within were taken under color of state law.

8.      This Court has federal question jurisdiction over plaintiff's Section 1983 claim pursuant to 28 U.S.C. §§ 1331 & 1343 and supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.      This Court is an appropriate venue for this action pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in the Southern District of New York.

10.     Pursuant to § 8-502(c) of the NYCHRL, plaintiff will serve a copy of this Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

11.     Plaintiff has fulfilled all administrative prerequisites to pursuing the claims asserted herein, including having filed a timely Notice of Claim with the City.

FACTUAL ALLEGATIONS

Background Concerning Stajic and the OCME

12.     Stajic was born in Yugoslavia in 1950.  She earned her Bachelor of Science degree in Chemistry from the University of Novi Sad in 1972.  That same year, after receiving her undergraduate degree, Stajic was permitted to immigrate to the United States.  Stajic enrolled at the University of Maryland, from which she earned a Ph. D. in Forensic Toxicology in 1977 with a minor in Pharmacology and Medicinal Chemistry.

13.     Stajic was a toxicologist for the Commonwealth of Virginia, Bureau of Forensic Science from 1977 to 1986.  Prior to that, from 1973 to 1977, Stajic had worked as a toxicologist for Central Laboratories of Associated Maryland Pathologists in Timonium, Maryland.

14.     Stajic is highly regarded in the forensic science community.  She is a past president of the American Academy of Forensic Sciences, one of the leading forensic science organizations in the country.  Stajic is also a member of the Society of Forensic Toxicologists, The International Association of Forensic Toxicologists, and a past President of the Mid-Atlantic Association of Forensic Scientists.  Stajic has also been a Diplomate of the American Board of Forensic Toxicology ("ABFT") since 1980 and a Fellow since 2015.  She has served as a Director of the ABFT Board since 1986 and is also a past president of that organization.  Stajic currently serves as a member of the Forensic Specialties Accreditation Board.

15.     Stajic frequently lectures and provides expert testimony in the field of forensic toxicology.  She was appointed Adjunct Associate Professor of Forensic Medicine (Toxicology) at New York University Medical Center in 1987 and Clinical Professor at PACE University, Dyson College of Arts and Sciences, Forensic Sciences Program, in 2010.  Stajic has received

multiple awards from the American Academy of Forensic Sciences. She has also served on the editorial board of the Journal of Forensic Sciences for nearly 30 years and she has authored or co-authored over 55 scientific articles over a 40-year period.

16.     In 1986, OCME hired Stajic as the Director of the Forensic Toxicology Laboratory ("FTL").

17.     OCME is established pursuant to New York State and New York City law and is responsible for investigating all deaths of persons in the City of New York occurring from criminal violence, by accident, by suicide, suddenly when in apparent health, or in any unusual or suspicious manner.

18.     In fulfilling its mission, OCME operates several laboratories.  The largest of those laboratories are the Forensic Biology Laboratory ("FBL") and the FTL.

19.     The FBL performs the serology and DNA testing on physical evidence from criminal cases within the City of New York.

20.     The primary mission of FTL is post mortem analysis, which, as described on OCME's public website, involves determining the "absence or presence of drugs and their metabolites or other toxic substances in human fluids and tissues and evaluates their role as a determinant or contributory factor in the cause and manner of death." http://www.nyc.gov/html/ocme/html/ftox/ForensicToxicology.shtml (last visited Feb. 17, 2016). In addition, the FTL also performs analysis on a "limited number of cases submitted by law enforcement agencies with the purpose of determining the absence or presence of ethanol and other drugs and evaluates their role in modifying human performance or behavior."  (*Id.*)

21.     Stajic's duties as the Director of the FTL included the following:

- Providing administrative, scientific and technical operational management of the FTL.

- Overseeing training of FTL personnel.

- Formulating and implementing FTL's operational policies, goals, and objectives.

- Supervising all FTL analyses in connection with deaths under investigation.

- Supervising casework and evaluation of toxicological findings.

- Implementing analytical methodologies related to forensic toxicology.

- Coordinating activities of FTL with medical examiners, the New York City Police Department, and District Attorneys' Offices.

- Serving as an expert witness in forensic toxicology.

22.     Stajic did not have any duties at OCME related to the Forensic Biology Laboratory.

23.     Sampson became the Acting Chief Medical Examiner in February 2013.

24.     Prior to Sampson's appointment as Acting Chief Medical Examiner, she had been First Deputy Chief Medical Examiner.  Stajic had reported to Sampson in that role.

25.     After Sampson became Acting Chief Medical Examiner, Stajic began reporting to Dr. Jason Graham, Acting First Deputy Chief Medical Examiner.

26.     Throughout Stajic's employment with OCME, she received positive feedback about the quality of her work, including from Sampson and Graham.  At no time did Sampson or anyone else from OCME ever tell her that her work performance needed improvement or that she might be removed from her position.

Stajic's Work on the New York State Commission on Forensic Science

27.     The Commission, established by Article 49-B of the New York Executive Law, is empowered to, among other things, develop minimum standards and a program of accreditation

for all forensic laboratories in New York State.  The Commission has a DNA subcommittee that is responsible for granting accreditation of DNA forensic labs.

28.     The Commission consists of fourteen members.  The governor appoints twelve of the fourteen.  New York law requires that one member of the Commission be the director of a forensic laboratory located in New York State.  N.Y. Exec. Law § 995-a(2)(b).

29.     New York law further provides that members of the Commission may continue to hold other public employment while serving on the Commission.  The law provides: "No member of the commission on forensic science shall be disqualified from holding any public office or employment, nor shall he or she forfeit any such office or employment, by reason of his or her appointment hereunder."  N.Y. Exec. Law § 995-a(6).

30.     In 2004, Governor Pataki appointed Stajic to serve on the Commission and to hold the position on the Commission designated for the director of a forensic laboratory.

31.     Stajic's appointment to the Commission was neither sponsored by nor endorsed by OCME.  Stajic's work on the Commission was completely separate from her work at OCME.

32.     Throughout Stajic's tenure on the Commission, she abstained from commenting or voting on issues that directly related to the FTL.  However, Stajic did participate in discussions and votes related to other aspects of the OCME's work, including matters relating to DNA testing that affected the work of the FBL.

33.     Stajic's appointment to the Commission was renewed by Governor Spitzer in 2007, Governor Patterson in 2010, and Governor Cuomo in 2013.

34.     After Sampson became the Acting Chief Medical Examiner in February 2013, Sampson asked Stajic if she abstained from voting on the Commission on matters related to the Forensic Biology Laboratory.  This was the first time that the Chief Medical Examiner had ever

inquired directly to Stajic about her work on the Commission.  Stajic replied to Sampson that it depended on the specific issue before the Commission, but that Stajic generally voted on matters related to the FBL because her duties at the OCME were not related to that laboratory.

Stajic's Participation in the Commission's Review of
Personnel Changes in OCME's Forensic Biology Lab

35.     In or about March 2013, OCME hired a consultant, Sorenson Forensics, to review and evaluate the management and operational structure, quality assurance practices, and administrative policies of the FBL.  At that time, Kupferschmid worked for Sorenson and was the lead consultant on the project.

36.     In or about May 2013, Sorenson Forensics issued its final report, which recommended many changes in the operations of the FBL, including new leadership. Kupferschmid was one of the co-authors of the report.

37.     Following the issuance of the report, Sampson forced the resignation of the head of the FBL, Mechthild Prinz, who was in her-mid fifties.

38.     Within one or two weeks after Prinz was compelled to resign, Kupferschmid expressed interest to Sampson and her chief of staff, Barbara Butcher, in replacing Prinz as the head of the FBL.

39.     In or about July 2013, Sampson hired Kupferschmid as Prinz's replacement.

40.     Shortly after Kupferschmid's hiring, Stajic asked Sampson if Kupferschmid's appointment could reasonably be viewed as a conflict of interest because Kupferschmid's report had recommended a change in the management of the FBL. Sampson replied that she did not consider Kupferschmid's appointment to be a conflict of interest.

41.    On August 22, 2013, the Commission held a special executive session meeting to discuss the changes in management at the FBL. Sampson, Butcher, and Kupferschmid were required to attend and testify.

42.    During the executive session, several commissioners expressed skepticism about the circumstances of Kuperfschmid replacing Prinz as the head of the FBL.  In particular, they were concerned about the appearance of a conflict of interest in Kuperfschmid co-authoring a report calling for "new leadership" at the forensic biology laboratory and then seeking the vacated position within a few weeks after his report was issued. These comments were similar to Stajic's previous statements to Sampson about Kuperfschmid's hiring.

43.    During the executive session, Stajic made clear her view that Prinz had been forced out of her position unfairly and that OCME's leadership, particularly Butcher, had not accurately described the circumstances of Prinz's removal.

44.    On information and belief, Sampson and Kuperfschmid became aware of the comments of Stajic and the other commissioners in the executive session, and they were displeased with the suggestion that OCME had not acted appropriately in terminating Prinz and hiring Kuperfschmid.

45.    When defendants learned that the Commission was planning on publicly releasing the transcript of the executive session, they became so alarmed that they had Zachary Carter, the Corporation Counsel of the City of New York, send multiple letters to Michael Green, the Chairperson of the Commission, objecting to the potential disclosure.  As a result of these objections, the transcript of the August 22, 2013, executive session was not publicly released.

Stajic's Vote to Request that the Forensic Biology Laboratory Produce its Internal Data

46.    On or about October 24, 2014, the Commission met and discussed, among other issues, the use of so-called "Low Copy Number" DNA analysis ("LCN") by the Forensic Biology Laboratory.   LCN is a form of DNA testing conducted on trace amounts of DNA samples, usually less than 100 to 200 picograms.

47.    The use of LCN in criminal proceedings is currently the subject of controversy in the scientific and legal communities because of concerns that the analysis produces an unacceptable number of false positive results, which in turn can result in wrongful convictions.

48.     On information and belief, the FBL is the only public DNA laboratory in the country that uses LCN in criminal cases.   Sampson and Kuperfschmid have been strong advocates for the OCME's continued use of LCN.

49.    Several representatives from OCME attended the Commission's meeting of October 24, 2014, including Florence Hutner, OCME's General Counsel; Eugene Lien, Assistant Director and Technical Leader of Nuclear DNA Testing Operations; and Craig O'Connor, Assistant DNA Technical Leader.

50.    Barry Scheck, Esq., a CFS Commissioner, participated in the October 24, 2014, meeting of the Commission.   Scheck is a well-known criminal defense attorney and, along with fellow CFS Commissioner Peter Neufeld, Esq., is the co-founder of the Innocence Project, an organization that assists prisoners who can be proven innocent through the use of DNA testing.

51.    At the October 24, 2014, meeting of the Commission, Scheck questioned Lien as to whether OCME had conducted an internal validation study that supported the use of LCN when the DNA sample recovered was a mixture of two or more people and the amount of the sample was particularly small (*i.e.*, 25 picograms or less).   Lien responded that OCME did

indeed possess an internal validation study supporting the use of LCN under those circumstances.

52.    Following Lien's statement, Scheck made a motion for the Commission to request that OCME produce the internal validation study referred to by Lien and for the study to be available to the public.

53.    Stajic voted in favor of Scheck's motion because she believed that OCME should produce the internal data that it claimed supported the continued use of LCN with particularly small DNA samples.  Stajic was also concerned that Lien's statement about the existence of an internal validation study may not have been accurate.

54.     Stajic was one of only three Commissioners to vote in favor of the motion, which was defeated.  In addition to Stajic and Scheck, the only other Commissioner voting in favor of the motion was Marvin Schechter, who is also a criminal defense attorney.  Neufeld did not attend the meeting of October 24, 2014.

55.    After Scheck's initial motion was defeated, he made a further motion for OCME's internal validation study to be produced to the Commission without public disclosure.  Stajic voted in favor of this motion as well, but it was also defeated.

56.    Stajic's vote in favor of Scheck's motions were taken at a public meeting of the Commission.  On information and belief, Sampson and Kuperfschmid became aware of Stajic's votes, and they were displeased that Stajic appeared to be aligned with the criminal defense lawyers on the Commission, who Sampson and Kupferschmid viewed as adversarial to OCME.

Defendants Terminate Stajic's Employment with OCME

57.    Mayor Bill de Blasio permanently appointed Sampson to Chief Medical Examiner position on or about December 10, 2014.

58.     In or about December 2014, shortly after Sampson was permanently appointed Chief Medical Examiner, Sampson promoted Kupferschmid to Chief of Laboratories, a newly created position.   In that role, Kupferschmid began to oversee all of OCME laboratories, including the FTL.  As a result, Stajic began to report to Kupferschmid.

59.     In January 2015, Kupferschmid began to attend weekly meetings with Stajic and her senior staff.  Stajic's previous supervisors, Sampson and Graham, rarely attended these meetings while overseeing FTL.

60.     In or about early January 2015, Kupferschmid met with Stajic and her two Assistant Directors of Toxicology, Elizabeth Marker and William Dunn. Marker and Dunn are close in age to Stajic.  At this meeting, Kupferschmid directly asked Stajic, Marker and Dunn when they planned to retire. Stajic and Dunn responded to Kupferschmid that they had no plans to retire; Marker said she would likely retire in September 2015.

61.     Neither Stajic nor her colleagues had given Kupferschmid any reason to believe that they were contemplating retirement.  Therefore, Kupferschmid's question was inappropriate and reflective of his stereotypical assumptions that employees in their mid-sixties would necessarily be considering retirement.

62.     During the period Kupferschmid supervised Stajic, he never expressed any dissatisfaction with her performance as the Director of the FTL.  Nor did Kupferschmid advise Stajic of any steps that he believed she needed to take to improve the operations of the FTL.

63.     In March 2015, Kupferschmid told Stajic that he did not believe it was necessary to provide her with formal criteria that would be used for her annual evaluation.  Kupferschmid noted that Stajic had not been given performance criteria for almost 20 years, and he did not see any reason to change that practice.

64.     On April 9, 2015, Stajic was called to a meeting with Sampson, Kupferschmid and Nancy Romero, Assistant Commission of Human Resources.   At this meeting, Sampson informed Stajic that her services were no longer required, and that her employment would be terminated effective immediately unless she elected to resign.   Stajic inquired whether she would be permitted to "retire" in lieu of termination.   Sampson agreed to Stajic's request.

65.     At the same meeting, Stajic asked Sampson why she was being forced out of her job.   Nancy Romero replied that she advised Sampson not to answer that question.   Sampson did not respond.

66.     Following the meeting, Stajic was escorted from OCME's offices by security.

67.     Although Stajic wished to continue working as the Director of FTL and did not want to retire, in light of Sampson's statement that she was going to be terminated immediately, Stajic submitted her retirement papers on April 10, 2015.

68.     On information and belief, since Sampson became the permanent Chief Medical Examiner, she and her deputies have engaged in a pattern of firing, demoting and forcing the resignation of senior management employees within OCME who are in their fifties and above.

69.     On or about April 10, 2015, Kupferschmid called Brian Gestring, the Director of the Office of Forensic Services and a member of the Commission, to inform him that Stajic was no longer the Director of FTL at OCME.   Before the call ended, Kupferschmid said to Gestring: "This means that [Stajic] is not on the Commission any more, right?"   Gestring responded that Stajic would continue to serve on the Commission until she was replaced.

70.     On information and belief, defendants believed that Stajic would be immediately disqualified from serving on the Commission due to her termination from OCME.   The next Commission meeting was scheduled for April 15, 2015.

71.     On or about April 15, 2015, while sitting in executive session, the Commission asked Kupferschmid and OCME General Counsel Florence Hunter to discuss the circumstances of Stajic's separation from OCME.   Kupferschmid and Hunter told the Commission that Stajic's departure was not related to the quality of her work, but they otherwise declined to explain the reasons why Stajic was removed from her position.

72.      During the same executive session, one or more members of the Commission expressed concern to Kupferschmid and Hunter that Stajic was forced out of her position with OCME in retaliation for her work on the Commission.  On information and belief, Kupferschmid and Hunter did not deny that Stajic's dismissal was connected to her work on the Commission. Indeed, Kupferschmid and Hunter said nothing to dispel the Commission's concerns that Stajic had been retaliated against.

73.     Because the Commission was concerned that Stajic was fired from OCME due to her work on the Commission, Chairperson Michael Green requested that the New York State Inspector General investigate the "circumstances surrounding Dr. Stajic's change in job status at the OCME."  However, the Inspector General's office declined to initiate an investigation on the grounds that Stajic's termination was beyond its jurisdiction.

74.     In or about July 2015, defendants offered Stajic's former position to Dr. Gail Cooper who, on information and belief, is approximately 41 years old and was the only person interviewed for the position.  In contrast to Stajic's over 42 years of toxicology experience, Cooper has only worked in the field for approximately 15 years.

75.     In accordance with the statutory requirement that at least one member of the Commission be the director of a forensic laboratory in New York State, in December 2015, Governor Cuomo replaced Stajic on the Commission with Pasquale Buffolino of the Nassau

County medical examiner's office.  Defendants thus fulfilled their goal of removing Stajic from the Commission.

## FIRST CAUSE OF ACTION

### First Amendment Retaliation Under Section 1983

#### (Against all defendants)

76.     Plaintiff repeats and realleges paragraphs 1-75 as if fully set forth herein.

77.     In her work on the Commission, plaintiff expressed views about matters of public significance that were unconnected to her duties at OCME.

78.     By the acts and practices described above, including forcing plaintiff to resign her employment with OCME because of plaintiff's protected First Amendment activities in connection with her work on the Commission, defendants have violated plaintiff's rights under the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

79.     Defendants engaged in these practices with malice and with reckless indifference to plaintiff's federally protected rights.

80.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendants' unlawful acts.

## SECOND CAUSE OF ACTION

### Retaliation under New York State Constitution

#### (Against all defendants)

81.     Plaintiff repeats and realleges paragraphs 1-80 as if fully set forth herein.

82.     By the acts and practices described above, including forcing plaintiff to resign her employment with OCME because of plaintiff's protected speech and expression in connection with

her work on the Commission, defendants have violated plaintiff's rights under Article I, Section 8 of the New York State Constitution.

83.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendants' unlawful acts.

THIRD CAUSE OF ACTION

Violation of N.Y. Exec. Law § 995-a(6)

(Against all defendants)

84.    Plaintiff repeats and realleges paragraphs 1-83 as if fully set forth herein.

85.    By the acts and practices described above, including requiring plaintiff to forfeit public employment by reason of her appointment on the Commission, defendants violated N.Y. Exec. Law § 995-a(6).

86.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages and damages for mental anguish and humiliation as a result of defendants' unlawful acts.

FOURTH CAUSE OF ACTION

Age Discrimination Under NYCHRL

(Against all defendants)

87.    Plaintiff repeats and realleges paragraphs 1-86 as if fully set forth herein.

88.    By the acts and practices above, including forcing plaintiff to resign her employment with OCME, defendants discriminated against plaintiff in the terms and conditions of her employment, at least in part, because of her age.

89.    The City and Sampson are liable as plaintiff's "employer" within the meaning of the NYCHRL.

16

90.     Sampson and Kupferschmid are liable as aiders and abettors of discrimination under NYCHRL § 8-107(6).

91.     Plaintiff is now suffering and will continue to suffer monetary damages and damages for mental anguish and humiliation as a result of defendant's discriminatory acts.

92.     Defendants acted intentionally and with malice and/or reckless indifference to plaintiff's statutory rights.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiffs respectfully request that this Court enter an award:

(a)     declaring the acts and practices complained of herein in violation of Section 1983, the First Amendment, the New York State Constitution, the Executive Law and the NYCHRL;

(b)      directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(c)     directing defendants to place plaintiff in the position she would be in but for defendants' retaliatory and discriminatory treatment of her, and to make her whole for all earnings she would have received but for defendants' unlawful actions;

(d)     awarding plaintiff compensatory damages for her mental anguish, emotional distress and humiliation;

(e)     directing defendants Sampson and Kupferschmid to pay plaintiff punitive damages;

(f)      awarding plaintiff pre-judgment and post-judgment interest, as well as reasonable attorneys' fees and the costs of this action; and

(g)     awarding such other and further relief as the Court deems necessary and proper.

<u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of he Federal Rules of Civil Procedure, plaintiff demands a

trial by jury in this action.


Dated: New York, New York
        February 18, 2016

                                        THE LAW OFFICE OF
                                        KEVIN MINTZER, P.C.


                        By:     /s/Kevin Mintzer
                                Kevin Mintzer
                                1350 Broadway – Suite 1400
                                New York, New York 10018
                                Tel: (646) 843-8180
                                Fax: (646) 478-9768
                                km@mintzerfirm.com



                                ALTERMAN & BOOP LLP

                                By: Daniel L. Alterman
                                99 Hudson Street – 8th Floor
                                New York, New York 10013
                                Tel: (212) 226 – 2800
                                Fax: (212) 431-3614
                                dalterman@altermanboop.com


                                *Attorneys for Plaintiff Marina Stajic*

18