UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MARINA STAJIC,

                           Plaintiff,

                -against-

THE CITY OF NEW YORK, BARBARA
SAMPSON, *in her individual capacity*, and TIMOTHY
KUPFERSCHMID, *in his individual capacity*,

                       Defendants.

-------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/30/16

1:16-cv-1258-GHW

<u>MEMORANDUM OPINION
AND ORDER</u>

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Plaintiff Marina Stajic is an accomplished forensic scientist who served as the Director of the Forensic Toxicology Laboratory ("FTL") for the New York City Office of Chief Medical Examiner ("OCME") for over 29 years.  In April 2015, she was told that she could either resign immediately or be terminated, without any prior indication that her performance was lacking or that her superiors were otherwise dissatisfied with her work.  From 2004 to 2015, Plaintiff also served on the New York State Commission on Forensic Science, a fourteen-member body charged with, among other things, developing minimum standards and a program of accreditation for all forensic laboratories in New York State.

Plaintiff filed this lawsuit against the City of New York, Barbara Sampson, and Timothy Kupferschmid, alleging that Ms. Sampson and Mr. Kupferschmid, two of her superiors at the OCME, orchestrated her ouster from her position as director of the FTL for discriminatory reasons and in retaliation for Plaintiff having expressed views on the Commission with which Ms. Sampson and Mr. Kupferschmid were dissatisfied.  Plaintiff asserts claims for First Amendment retaliation, retaliation under the New York State Constitution, violation of New York Executive Law § 995-a(6),

and age discrimination under the New York City Human Rights Law.  Defendants now move to dismiss only Plaintiff's First Amendment retaliation claim, arguing that Plaintiff's termination from the OCME lacks sufficient temporal proximity to Plaintiff's alleged instances of protected speech to establish that the two were causally linked, which is a required element of a First Amendment retaliation claim.  However, because Plaintiff does not rely solely on temporal proximity in pleading her First Amendment retaliation claim, and also alleges facts that could constitute direct evidence of retaliatory animus, Defendants' motion must be denied.

## II.     BACKGROUND

Plaintiff has asserted claims for First Amendment retaliation, retaliation under the New York State Constitution, violation of New York Executive Law § 995-a(6), and age discrimination under the New York City Human Rights Law.  Complaint, Dkt. No. 1 at 15-17.  On June 15, 2016, Defendants moved to dismiss only the First Amendment claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Def. Memo, Dkt. No. 28 at 2.  Defendants' motion notes that "defendants are not moving to dismiss" Plaintiff's state law claims; rather, Defendants "request that the Court dismiss plaintiff's sole federal claim" and that the Court "decline to exercise supplemental jurisdiction over those claims."  *Id.*  Additionally, Defendants' motion states that "Defendants assume, solely for purposes of this motion," that Plaintiff engaged in protected speech and that she suffered an adverse employment action.  *Id.* at 6.  Accordingly, Defendants contest only the "causal connection" element of Plaintiff's First Amendment retaliation claim.

The OCME hired Plaintiff as the Director of the FTL in 1986.  Compl. ¶ 16.[1]  The primary mission of the FTL is post mortem analysis.  *Id.* ¶ 20. The OCME also operates the Forensic Biology Laboratory ("FBL"), which performs serology and DNA testing on physical evidence from

---

[1] At the motion to dismiss stage, the allegations in the complaint are accepted as true and all reasonable inferences are drawn in Plaintiff's favor.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

criminal cases in the City of New York. *Id.* ¶¶ 18-19. Plaintiff did not have any duties at the OCME related to the FBL. *Id.* ¶ 22. In 2004, Governor George Pataki appointed Plaintiff to serve on the New York State Commission on Forensic Science, and to hold the position designated by statute for the director of a forensic laboratory. *Id.* ¶ 30. Under New York law, one member of the Commission "shall be the director of a forensic laboratory located in New York state." N.Y. Exec. Law § 995-a(2)(b).

Plaintiff's appointment on the Commission was renewed in 2007, 2010, and 2013. *Id.* ¶ 33. While working on the Commission, Plaintiff abstained from voting or commenting on issues that directly related to the FTL, but she did participate in discussion and votes related to other aspects of the OCME's work, including matters relating to the FBL. *Id.* ¶ 32.

In or about July 2013, Barbara Sampson, then the Acting Chief Medical Examiner at the OCME, hired Timothy Kupferschmid to replace Mechthild Prinz as the head of the FBL. *Id.* ¶¶ 37-39. Several weeks earlier, Sorenson Forensics, an outside consultant that employed Mr. Kupferschmid, had issued a report recommending changes in the operations of the FBL, including new leadership. *Id.* ¶¶ 35-36. Mr. Kupferschmid was one of the co-authors of the report. Shortly after Mr. Kupferschmid was hired, Plaintiff asked Ms. Sampson if his "appointment could reasonably be viewed as a conflict of interest," and Ms. Sampson replied that she did not consider his appointment to be a conflict. *Id.* ¶ 40. During an executive session held by the Commission on August 22, 2013, Plaintiff "made clear her view that Prinz had been forced out of her position unfairly." *Id.* ¶ 43. The complaint alleges that "Sampson and Kupferschmid became aware of the[se] comments . . . and they were displeased with the suggestion that OCME had not acted appropriately in terminating Prinz and hiring Kupferschmid." *Id.* ¶ 44.

The complaint alleges that the "use of LCN in criminal proceedings is currently the subject of controversy in the scientific and legal communities because of concerns that the analysis produces an unacceptable number of false positive results, which in turn can result in wrongful convictions,"

3

but that "Sampson and Kupferschmid have been strong advocates for the OCME's continued use of LCN." *Id.* ¶¶ 47-48.

During an October 24, 2014 meeting, Barry Scheck, a commissioner and well-known criminal defense attorney, questioned Eugene Lien, Assistant Director and Technical Leader of Nuclear DNA Testing Operations at the OCME, "as to whether OCME had conducted an internal validation study that supported the use of LCN when the DNA sample recovered was a mixture of two or more people and the amount of the sample was particularly small." *Id.* ¶ 51.  Mr. Lien responded that OCME "did indeed possess an internal validation study supporting the use of LCN under those circumstances." *Id.*  Mr. Scheck then made a motion for the Commission to produce the study and for the study to be made available to the public.  *Id.* ¶ 52.  Plaintiff voted in favor of that motion.  *Id.* ¶ 53.  She was one of only three commissioners to vote in favor of the motion, which was defeated.  *Id.* ¶ 54.  The only other commissioners to vote in favor of the motion were Mr. Scheck and Marvin Shechter, who is also a criminal defense attorney.  *Id.*  After the initial motion was defeated, Mr. Scheck made another motion for the OCME's study to be produced to the Commission without public disclosure.  Plaintiff also voted in favor of this motion, but it too was defeated.  *Id.* ¶ 55.  The complaint alleges that "Sampson and Kupferschmid became aware of Stajic's votes, and they were displeased that Stajic appeared to be aligned with the criminal defense lawyers on the Commission, who Sampson and Kupferschmid viewed as adversarial to OCME."  *Id.* ¶ 56.

On December 10, 2014, Mayor Bill de Blasio permanently appointed Ms. Sampson as Chief Medical Examiner; shortly thereafter, Ms. Sampson promoted Mr. Kupferschmid to the position of Chief of Laboratories, a newly created position to which Plaintiff began to report.  *Id.* ¶¶ 57-58.  In or about early January 2015, Mr. Kupferschmid met with Plaintiff and her two Assistant Directors of Toxicology, Elizabeth Marker and William Dunn, and asked them "when they planned to retire. Stajic and Dunn responded . . . that they had no plans to retire; Marker said she would likely retire in

September 2015." *Id.* ¶ 60.  "During the period Kupferschmid supervised Stajic, he never expressed any dissatisfaction with her performance as the Director of the FTL" nor had he "advise[d] Stajic of any steps that he believed she needed to take to improve the operations of the FTL." *Id.* ¶ 62.

On April 9, 2015, Plaintiff was called to a meeting with Ms. Sampson, Mr. Kupferschmid, and Nancy Romero, Assistant Commissioner of Human Resources, during which she was informed "that her services were no longer required, and that her employment would be terminated effectively unless she elected to resign." *Id.* ¶ 64.  She "asked Sampson why she was being forced out of her job" but "Nancy Romero replied that she advised Sampson not to answer that question" and "Sampson did not respond." *Id.* ¶ 65.  Plaintiff submitted her retirement papers on April 10, 2015. *Id.* ¶ 67.

On or about April 10, 2015, Mr. Kupferschmid called Brian Gestring, the Director of the Office of Forensic Services and a member of the Commission, to inform him that Plaintiff was no longer the director of the FTL.  Before the call ended, Mr. Kupferschmid asked Mr. Gestring, "[t]his means that [Stajic] is not on the Commission any more, right?" *Id.* ¶ 69.  Mr. Gestring responded that she would continue to serve until she was replaced. *Id.*

On or about April 15, 2015, "while sitting in executive session, the Commission asked Kupferschmid and OCME General Counsel Florence Hunter to discuss the circumstances of Stajic's separation from OCME.  Kupferschmid and Hunter told the Commission that Stajic's departure was not related to the quality of her work, but they otherwise declined to explain the reasons why Stajic was removed from her position." *Id.* ¶ 71.

### III.   LEGAL STANDARDS

#### a.  Motion to Dismiss under Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While a complaint need not provide "detailed factual allegations," it nevertheless must assert "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The facts pleaded "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (citations omitted). The court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the nonmoving party. *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

### b. First Amendment Retaliation

To state a claim for First Amendment retaliation, a plaintiff must plausibly allege that "(1) h[er] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against h[er]; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (citation omitted).

"The causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action, that is to say, the adverse employment action would not have been taken absent the employee's protected speech." *Morris v. Landau*, 196 F.3d 102, 110 (2d Cir. 1996). "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Mandell v. County of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003).

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action," *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citation omitted), and generally, "[t]emporal proximity is strong circumstantial evidence

of improper intent," *Anderson v. State of New York, Office of Court Admin.*, 614 F. Supp. 2d 404, 430 (S.D.N.Y. 2009).  The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Id.*  "[D]irect evidence of retaliation may consist of 'conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged retaliatory attitude.'" *McAvey v. Orange-Ulster BOCES*, 805 F. Supp. 2d 30, 40 (S.D.N.Y. 2011) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir. 1997) (brackets omitted)).

Importantly, to survive a motion to dismiss for lack of causation, "the plaintiff's pleading need not clearly establish that the defendant harbored retaliatory intent.  It is sufficient to allege facts which could reasonably support an inference to that effect." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999).  "Causation generally is a question for the finder of fact" and "[o]n this motion, the role of the Court is to determine whether Plaintiff has alleged facts that could support a reasonable finding of a causal connection between [her] protected speech and the adverse employment action." *DePace v. Flaherty*, 183 F. Supp. 2d 633, 638 (S.D.N.Y. 2002).

## IV.  DISCUSSION

As noted above, Defendants challenge only the "causal connection" element of Plaintiff's First Amendment retaliation claim.  Defendants argue that "plaintiff cannot establish a causal connection between her allegedly protected speech on August 22, 2013 and October 24, 2014, and her allegedly forced resignation on April 9, 2015, one year and seven months, and five and a half months later respectively."  Def. Memo at 2.  Defendants argue that "[t]his lack of temporal proximity breaks any causal connection" and accordingly, "plaintiff's First Amendment claim fails." *Id.*; *see also id.* at 7 ("Because of the lack of temporal proximity between plaintiff's allegedly protected speech . . . and here allegedly forced resignation . . . plaintiff cannot establish the requisite causal connection.").

However, as previously discussed, the causal connection that a plaintiff must allege in order to survive a motion to dismiss a First Amendment retaliation claim may be alleged indirectly by, for example, alleging that the protected activity was followed by adverse treatment in employment *or* directly, by alleging direct evidence of retaliatory animus.  Here, the Court finds that Plaintiff has alleged direct evidence of retaliatory animus, independent of any inferences that could or could not be plausibly drawn with respect to the temporal proximity between the protected speech and the adverse action, sufficient to survive Defendants' motion to dismiss.

The complaint describes Plaintiff's work on the Commission, and alleges that in various instances, her work on the Commission displeased the Defendants.  Those instances concern Plaintiff's remarks about the termination of Ms. Prinz and the hiring of Mr. Kupferschmid, and her votes in favor of the motions that the OCME produce the LCN internal validation study.  The complaint then alleges several statements and conduct by Defendants which could plausibly reflect a retaliatory attitude in response to Plaintiff's work on the Commission, including Mr. Kupferschmid's asking Mr. Gestring if Plaintiff would no longer be on the Commission given her departure from the OCME, and the statements by Mr. Kupferschmid and Ms. Hutner to the Commission that Plaintiff was not terminated for any reason related to the quality of her work.

The Court finds that Plaintiff has "allege[d] facts which could reasonably support an inference" that Defendants harbored retaliatory intent.  *Posr*, 180 F.3d at 418.  A jury would be entitled to find, based on the facts that Plaintiff has alleged, that Defendants retaliated against her for the views she expressed and positions she took in connection with her work on the Commission, and that the decision to terminate her was in retaliation for expressing those views and taking those positions.  Furthermore, given the plausibility of the inference that Plaintiff was terminated for retaliatory reasons, it is similarly plausible that she was terminated in order to prevent her from continuing her work on the Commission.  The statutory requirement that at least one member of the Commission be the head of a forensic laboratory in New York provided a mechanism by which

terminating Plaintiff from the OCME could serve to prevent her from continued involvement with the Commission.

## V.    CONCLUSION

For these reasons, Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim is DENIED.  The Clerk of Court is directed to terminate the motion pending at Dkt. No. 27.

SO ORDERED.

Dated:  September 30, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge