

ZACHARY W. CARTER
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**PAUL MARKS**
phone: (212) 356-2432
e-mail: pmarks@law.nyc.gov

May 29, 2018

**BY ECF**
Hon. Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: Stajic v. City of New York, et al., 16-CV-1258 (GHW)

Dear Judge Woods:

Defendants submit this letter in response to plaintiff's May 23, 2018 letter concerning the Second Circuit's decision May 16, 2018 decision in *Montero v. City of Yonkers,* No. 17-76-cv, 2018 U.S. App. LEXIS 12629 (2d. Cir. May 16, 2018).

**Plaintiff's Statements at the August 22, 2013 CFS executive session**

If the Second Circuit's decision in *Montero* can be read to hold that the lack of a civilian analogue to a public employee's speech, does not as a matter of law, preclude a finding that the employee spoke as a private citizen, then defendants' argument in their summary judgment motion that plaintiff's statements at the August 22, 2013 CFS executive session are not protected by the First Amendment, *see* Defendants' Memorandum of Law in Support of their Motion for Summary Judgment at 14-15, is no longer valid.

**Plaintiff's 2013 Statement to Dr. Sampson concerning the hiring of defendant Kupferschmid as Director of the OCME's Forensic Biology Laboratory**

*Montero* does not support plaintiff's argument that plaintiff's argument that her suggestion to Dr. Sampson in June or July 2013 a possible conflict of interest in OCME's hiring of defendant Kupferschmid as Director of the Forensic Biology Laboratory constitutes speech protected by the First Amendment. There is no question that plaintiff made that statement pursuant to her official duties as Director of the Forensic Toxicology Laboratory and that there is no civilian analogue for that communication with Dr. Sampson. It is undisputed that plaintiff made this statement during one of the "informal meetings and chats" that she had regularly with

Dr. Sampson (*see* Defendants' Rule 56.1 Statement, ¶78 and Plaintiff's Rule 56.1(b) Statement, ¶78), and that when she made that statement, plaintiff regularly had such meetings with Dr. Sampson in the ordinary course of her work at OCME. *See* Defendants' Rule 56.1 Statement, ¶79; Plaintiff's Rule 56.1(b) Statement, ¶79. Such meetings were unquestionably "part-and-parcel" of plaintiff's concerns about her "ability to properly execute [her] duties." *See Weintraub v. Board of Education of the City School District of the City of New York*, 593 F.3d 196, 201, 203 (2d Cir. 2010).

Further, according to plaintiff, there were no restrictions on the issues that plaintiff could raise at those meetings. Plaintiff testified at her deposition "always felt that I could just walk into her office and bring up *any* issues," and that Dr. Sampson was "always ready to discuss these issues . . ." *See* Defendants' Rule 56.1 Statement, ¶79 (emphasis added). Given that plaintiff was permitted to raise any issue she wished in these meetings with Dr. Sampson, whether or not it directly concerned the Forensic Toxicology Laboratory issues, she cannot now belatedly seek to redefine which issues among the "any" fall within the scope of her job duties and which do not. Accordingly, defendants are entitled to summary judgment on plaintiff's First Amendment claim based on her statement to Dr. Sampson about the hiring of defendant Kupferschmid.

### **Qualified Immunity**

The Second Circuit's decision in *Montero* has no bearing on defendants' argument that defendants Sampson and Kupferschmid are entitled to qualified immunity from liability on plaintiff's First Amendment claims based on her statement to Dr. Sampson in June or July 2013 or on her votes at the October 24, 2014 CFS meeting. Instead of repeating their arguments on those issues here, defendants respectfully refer the Court to Defendants' Memorandum of Law in Support of their Motion for Summary Judgment at 17-19 and their Reply Memorandum of Law at 9-10. The Second Circuit's decision in *Montero*, however, not only bears on the argument that defendants Sampson and Kupferschmid are entitled to qualified immunity from liability on plaintiff's First Amendment claim based on her statements at the August 22, 2013 executive session of the New York State Commission on Forensic Science ("CFS executive session"), but supports that argument, as it is evident from the Court's decision that as of April 9, 2015, the date that plaintiff's employment was terminated, it was not clearly established that a public employee's speech that lacks a civilian analogue is protected by the First Amendment.

Even assuming that plaintiff did not speak pursuant to her official duties as Director of the OCME's Forensic Toxicology Laboratory at the CFS executive session, under the unique facts of this case, it was not clearly established that she spoke as a private citizen. As plaintiff's position as a director of a government forensic laboratory was a requirement for her membership on the CFS, *see* New York Executive Law §§995(1) and 995-a(3), at a minimum, she spoke pursuant to her official duties as a member of the CFS. Further, plaintiff indisputably spoke via a channel that private citizens were prohibited from using: an executive session of a governmental body, which is by statutory definition closed to the public and clearly has no civilian analogue. *See* New York Public Officers Law §102(3).

In *Montero*, the Second Circuit observed that "[t]here may be some confusion as to whether both questions (1) and (2) in *Matthews*—i.e. whether (1) the speech was outside the speaker's official responsibilities and (2) there was a civilian analogue—must be answered in the affirmative for the speech to be protected citizen speech under *Garcetti*. *See, e.g., Brown v.*

2

*Office of State Comptroller,* 211 F.Supp. 2d 455, 467 (D. Conn 2016), *appeal dismissed in part,* 885 F.3d 111 (2d Cir. 2018)." *Montero,* 2018 U.S. App. LEXIS 12629 at *21. The *Montero* Court went on to state that: "We believe that the Supreme Court made the answer clear: Although the presence or lack of a civilian analogue may be of some help in determining whether one spoke as a citizen 'the critical question under *Garcetti* is whether the speech at issue is ordinarily within the scope of the employee's duties." *Id.* at 21-22 (quoting *Lane v. Franks,* 134 S.Ct. 2369, 2379 (2014)). However, later in its opinion, when addressing the issue of whether the two of the individual defendants were entitled to qualified immunity, the Court observed that at the time those defendants engaged in the alleged acts of retaliation (which was between March 2011 and July 2014), "the role of a citizen analogue in determining whether one speaks as a citizen remained murky . . ." *Id.* at *24. Thus, within its decision, the Second Circuit characterized the significance of the presence or lack of a civilian analogue as the subject of "confusion," referring to a 2017 District Court opinion, then something that the Supreme Court had made "clear," and then an issue that "remained murky." Under these circumstances, defendants submit, as they argued in their summary judgment motion, that it was not clearly established that a public employee's speech, made at least pursuant to her official duties for another governmental entity, and for which there was no civilian analogue, was entitled to protection under the First Amendment.

As the Supreme Court cautioned in *White v.* Pauly, 137 S.Ct. 548, 551-552 (2017), the clearly established law must be "particularized" to the facts of the case (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). The case here presents a unique set of facts: speech by a City employee as member of a State Commission, whose membership on that Commission was dependent on her City employment (or at least her governmental employment), and which was made via a channel for which no civilian analogue exists. Thus based on existing precedent, it is not "beyond debate" that plaintiff spoke as a citizen on a matter of public concern at the CFS executive session. *See White v. Pauly,* 137 S.Ct. 548, 551-552 (2017) (quoting *Mullenix v. Luna,* 136 S.Ct. 305, 308 (2015) (per curiam). *See Montero,* 2018 U.S. App. LEXIS 12629 at 35 ("Because the specific question of whether the plaintiff's alleged union remarks were protected by the First Amendment was not beyond debate at the time of Moran's and Mueller's alleged retaliation against *Montero,* nor does *Clue* hold otherwise, we conclude as a matter of law that under the claims as pled by *Montero,* these defendants are protected from liability by qualified immunity."). Accordingly, for the reasons set forth above, as well as in their summary judgment motion, defendants Sampson and Kupferschmid are entitled to qualified immunity on all of plaintiff's First Amendment claims.

Respectfully submitted,

*/s/ Paul Marks*

Paul Marks
Assistant Corporation Counsel

cc: (by ECF) Kevin Mintzer and Daniel Alterman